UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICK G.S., <br>              Plaintiff, <br><br>      v. <br><br> MARTIN J. O'MALLEY,[1] <br> Commissioner of Social Security, <br>              Defendant. | Case No.  CV 23-5589 (RAO) <br><br> **MEMORANDUM OPINION AND ORDER** |

**I.     INTRODUCTION**

Plaintiff Rick G.S.[2] ("Plaintiff") challenges the Commissioner's denial of his application for period of disability and disability insurance benefits ("DIB").  For the reasons stated below, the decision of the Commissioner is **AFFIRMED**.

///

///

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley, the Commissioner of Social Security, is hereby substituted as the defendant.

[2] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

## II. SUMMARY OF PROCEEDINGS

Plaintiff applied for a period of disability and DIB on January 26, 2011, alleging disability as of April 12, 2002. (AR 159-65.) His application was denied initially on March 16, 2011, (AR 84), and upon reconsideration on July 19, 2011, (AR 88). At Plaintiff's request, a hearing before an administrative law judge ("ALJ") took place on April 10, 2012. (*See* AR 46-83.)

### The September 21, 2012, Decision

The ALJ's September 21, 2012, decision followed the familiar five-step sequential evaluation process for determining disability. At **step one**, the ALJ found Plaintiff had not engaged in substantial gainful activity from April 12, 2002, through his date last insured of December 31, 2007. (AR 37.) At **step two**, the ALJ determined Plaintiff had several severe impairments: strain/sprain of the cervical spine, right shoulder impingement syndrome, strain/sprain of the lumbar spine superimposed on a 3-4 mm disc bulge at L4/L5, strain/sprain of the right knee and status post left knee arthroscopy. (*Id.*) At **step three**, the ALJ concluded that Plaintiff did not have an impairment or combination thereof that meets the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ assessed Plaintiff also had the residual functional capacity ("RFC") to perform medium work, meaning he could lift and carry up to 25 pounds frequently and 50 pounds occasionally, stand and/or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, and engage in frequent work above right shoulder level and occasional climbing, kneeling, crouching (squatting), and crawling. He could also perform light work as defined in 20 C.F.R. § 404.1567(b), meaning Plaintiff could lift, carry, push, and pull 10 pounds frequently and 20 pounds occasionally; sit six hours in an eight-hour workday; stand and/or walk six hours in an eight-hour workday; occasionally climb stairs and ramps; no ladder, rope, or scaffold climbing; occasional balancing, stooping, kneeling, crouching, and crawling; and no overhead reaching or work bilaterally and with the ability to

alternate sitting with standing. (AR 37.) At **step four**, the ALJ concluded Plaintiff could perform past relevant work as customarily performed but that, in the alternative, he will be deemed unable to do the past work pursuant to the amended Social Security Regulations, effective August 24, 2012. (AR 38-39.) At **step five**, the ALJ concluded there were a significant number of jobs in the national economy Plaintiff could perform, considering his age, education, work experience, and RFC. (AR 39.) The ALJ concluded Plaintiff was not under disability. (AR 40.)

After the Appeals Council denied Plaintiff's request for review on May 29, 2014, (AR 1-6), Plaintiff filed suit asking the Court to reverse and remand the matter. *See Rick G.S. v. Colvin*, No. 14-5758 (C.D. Cal. filed June 24, 2014). The Court reversed the Commissioner's decision and remanded the matter, finding the ALJ erred in evaluating Plaintiff's subjective symptom testimony. Although raised by Plaintiff, the Court did not address whether Dr. Leslie Metcalf's opinion was properly considered because remand was warranted on the symptom testimony issue alone. (AR 1461-68.)

The November 9, 2017, Decision

Another hearing occurred on June 20, 2017. (AR 1390–1413.) A vocational expert did not testify at this hearing. The second unfavorable decision was issued on November 9, 2017.

The ALJ's findings at steps one through three were identical to her findings from the September 21, 2012, decision, though a different RFC was assessed. (*See* AR 1479.) Plaintiff's new RFC limited him to light work as defined in 20 C.F.R. § 404.1567(b), meaning he could lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; stand and/or walk six hours in an eight-hour workday; sit for six hours in an eight-hour workday; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; never perform overhead activity; can work with either hand; and can alternate between sitting and standing in an eight-hour workday. (AR 1479.) At **step four**,

the ALJ concluded Plaintiff could not perform any past relevant work. (AR 1490.) At **step five**, the ALJ concluded there were a significant number of jobs in the national economy Plaintiff could perform, considering his age, education, work experience, and RFC. (AR 1491.) Accordingly, the ALJ concluded Plaintiff was not disabled. (AR 1492.)

On May 4, 2022, and upon Plaintiff's Request for Review, the Appeals Council remanded the Commissioner's decision for the same reason as did the district judge. (AR 1501–03.)

The April 26, 2023, Decision

A third hearing was held on February 16, 2023. (AR 1375-87.) The hearing was conducted telephonically, and an impartial vocational expert testified. (*See* AR 1641-45.) A third unfavorable decision was issued on April 26, 2023.

The ALJ's finding at **step one** was the same as the previous finding. (AR 1357 (no substantial gainful activity).) At **step two**, the ALJ concluded Plaintiff had several severe impairments: cervical degenerative disc disease; lumbar degenerative disc disease; right shoulder degenerative joint disease and impingement syndrome; bilateral knee degenerative joint disease; and left knee meniscal tear status post left knee arthroscopy. (*Id.*) At **step three**, the ALJ concluded Plaintiff did not have an impairment or combination thereof that meets the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ determined Plaintiff had the RFC to perform light work, except he was precluded from climbing ladders, ropes, and scaffolds, and reaching overhead with the bilateral upper extremities; could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; and he was required to have a sit/stand at-will option. (AR 1358.) At **step four**, the ALJ determined Plaintiff was unable to perform any past relevant work. (AR 1364.) At **step five**, the ALJ concluded there were a significant number of jobs in the national economy Plaintiff, considering his age, education, work experience, and

RFC, could perform. (AR 1365.) The ALJ again concluded Plaintiff was not disabled. (*Id.*)

Plaintiff filed suit challenging the Commissioner's decision on July 12, 2023. (Dkt. No. 1.) The parties filed their respective briefs for the Court's consideration. (*See generally* Dkt. Nos. 9 ("Pl. Brief"), 14 ("Comm'r Brief"), 15 ("Pl. Reply").)

## III. **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "Substantial evidence . . . is 'more than a mere scintilla[,]' . . . [which] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. __, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted); *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotations omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340

F.3d 871, 874 (9th Cir. 2003)).

## IV. DISCUSSION

Plaintiff raises one issue for review: Whether the ALJ provided specific and legitimate reasons for rejecting Dr. Metcalf's opinion.[3] (Pl. Brief at 4.)

Plaintiff argues the ALJ's reasons were not sufficiently specific and legitimate because Dr. Metcalf was a treating physician and therefore his medical opinion was entitled to more weight; Dr. Metcalf did in fact support his conclusion with medical evidence and corroborating findings from other physicians; the ALJ incorrectly classified some of Plaintiff's objective findings as benign; the ALJ did not sufficiently explain why objective findings undermined Dr. Metcalf's findings; the ALJ was not qualified to interpret raw medical data; the ALJ mischaracterized Plaintiff's treatment regimen as "generally routine and conservative"; and the ALJ was biased in evaluating the opinion of Dr. Metcalf. (*See generally* Pl. Brief.)

The Commissioner argues the ALJ gave specific and legitimate reasons to support her conclusion that Dr. Metcalf's opinion was neither well-supported nor consistent with other evidence in the record. (*See* Comm'r Brief at 6.)

The Court agrees with the Commissioner.

### A. Applicable Law

Because Plaintiff filed his claim for benefits before March 27, 2017, the pre-*Woods v. Kijakazi* regulations, which "weighed medical opinions based on the extent of the doctor's relationship with the claimant," apply. 32 F.4th 785, 789 (9th Cir. 2022); *see* SSR 96-2p, 1996 WL 362211 (July 2, 1996); *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). Treating physicians' opinions are entitled to substantial

---

[3] As the Commissioner points out, Plaintiff did not challenge nor argue the adequacy of the ALJ's analysis of any other medical opinions and assessments. (Comm'r Brief at 11 n.3.) The Court therefore considers these arguments waived and does not address medical opinions not set forth in Plaintiff's briefs. *See id.* (citing *Cruz v. Int'l Collection Corp.*, 673 F.3d 991, 998 (9th Cir. 2012)).

weight, examining physicians' opinions receive less weight, and non-examining physicians' opinions receive the least weight. *Woods*, 32 F.4th at 789; (*see* Pl. Brief at 9-10). If an ALJ discounts a treating physician's opinion because it conflicts with another doctor's opinion, he must provide specific and legitimate reasons as to why. *Petite v. Astrue*, No. 09-1347, 2010 WL 2232116, at *3 (C.D. Cal. June 1, 2010); *see Zamora v. Saul*, No. 18-1066, 2020 WL 1028330, at *4 (E.D. Cal. Mar. 3, 2020).

### B. Dr. Metcalf's Medical Opinion

Dr. Metcalf treated Plaintiff between 2002 and 2011. Dr. Metcalf's findings were recorded on standardized, fill-in-the-blank forms, the aggregate of which contained the same or similar findings across all nine years.

For example, on April 2, 2007, Dr. Metcalf recorded Plaintiff's complaints of constant neck pain with radiation down his right arm to his fingers, constant lower back pain, intermittent right sciatica, and shooting pain to his right calf and foot. MRIs from November 19, 2002, showed a 3.4mm right disc bulge at L4-5; a 4.3mm disc bulge at C3-4; a 2.5mm disc bulge at C4-5; and a 2mm disc bulge at C5-6 with a spur on the right side at C6-7 with narrowing of the right lateral recess. (AR 279-80.)

Another progress report from September 25, 2007, stated Plaintiff complained of constant neck pain with radicular pain down the right arm to his ulnar two fingers, constant low back pain with intermittent right sciatica and shooting pain to the right calf and foot, increase in pain when standing or sitting for more than 30 minutes; and increased pain in the right shoulder on abduction. An MRI of his lower back revealed a herniated disk at L4-5, and an MRI of the cervical spine revealed a 4.3mm bulge at C3-4 and a spur at C5-6 on the right side. He recommended Plaintiff continue home exercise and pool therapy and renew medications as needed. There was no change to his treatment plan, nor stationary state. (AR 274-75.) Dr. Metcalf's notes on Plaintiff's ailments and treatment plan were largely the same as his notes from June 26, 2007. (*See* AR 277-28.)

Dr. Metcalf's progress reports for Plaintiff in 2002–04 reflect findings similar to those made in 2007: constant pain traveling from the neck to the shoulder, lower back pain, right shoulder pain, lumbosacral strain, and pain in the hips and knees. (*See, e.g.*, AR 342 (Nov. 25, 2002), 610 (Mar. 2, 2004), 613 (Jan. 20, 2004), 651 (Jan. 28, 2003), 654 (Dec. 17, 2002).)

**C. ALJ's Decision**

The ALJ did not give Dr. Metcalf's opinion significant weight, stating it was unsupported by objective findings, supported largely by a summary of subjective complaints, and lacked an explanation. (AR 1362-63 (citing Exhs. 1F, 4F).)

The ALJ discounted Dr. Metcalf's opined limitation that Plaintiff was precluded from maintenance of the head/neck in a fixed position and from repetitive bending, twisting, or turning of the head or neck because examination findings showed minimal and benign objective findings pertaining to the neck; and the only findings that might support those limitations were a positive cervical foraminal compression test and cervical tenderness. (*Id.* (citing Exhs. 1F, 4F).) The ALJ also discounted Dr. Metcalf's opinion that Plaintiff could not perform repetitive work at or above the shoulder level because Plaintiff, during an examination, exhibited full range of motion, despite a positive Neer's test. (*Id.*) The ALJ cited a lack of support for Dr. Metcalf's opinion that Plaintiff had a limited ability to grip and grasp. She noted Dr. Metcalf's assessment that Plaintiff had only a limited ability to kneel was not supported by an examination that showed only tenderness in the knees. (*Id.*) Similarly, Dr. Metcalf's opined limitation that Plaintiff could only sit, stand, and walk for up to two hours each in an eight-hour day without the ability to engage in postural activities was also unpersuasive because physical examinations revealed only benign objective findings, including tenderness, positive straight leg-raising test, positive pelvic compression test, and normal gait, stance, posture, motor strength, and reflexes. (*Id.*)

///

Other limitations were disregarded for being inconsistent with Plaintiff's generally routine conservative treatment. (*Id.*) Of the portions of Dr. Metcalf's opinion that the ALJ found consistent with Plaintiff's conservative treatment, the ALJ accorded those portions significant weight and translated them into limitations included in Plaintiff's RFC: Plaintiff is limited to no heavy lifting or lifting over 25 pounds, must have the sit/stand option at work, and he has the ability to engage in some postural activities. (*Id.*)

The ALJ lastly discounted Dr. Metcalf's opinion because it was formed in the workers' compensation context, which tends to be adversarial because reports submitted on the employee's behalf tend to maximize the nature and extent of the injury, while reports submitted on the employer's behalf do the opposite. (*Id.*) For that reason, the ALJ gave more weight to Dr. Wood, an orthopedic surgeon who was an agreed medical examiner in Plaintiff's workers' compensation case. Dr. Wood opined Plaintiff was precluded from repetitive work above shoulder-level on the right side, very heavy work, and repetitive postural activities because MRI scans showed lumbar degenerative disc disease, impingement syndrome, and degeneration of the right shoulder, and benign and minimal findings from his own examination. The only pertinent findings were cervical and lumbar tenderness and little positive impingement sign on the right. Other than that, the findings of Plaintiff's exam were normal. (*See* AR 1364.) The ALJ noted Dr. Wood's opinion was consistent with the lack of atrophy, benign objective findings from his treating physician (Dr. Metcalf), and his admissions to a neutral third-party emergency room physician that he did not experience pain with walking, standing, or exercising, and that he could exercise with weights. (*Id.*)

### D. Analysis

The parties agree the "specific and legitimate" standard applies because Dr. Metcalf's opinion was controverted by Dr. Wood's opinion. (AR 1363-64; Pl. Brief at 16; *see* Comm'r Brief at 9-11.) Applying that standard, the ALJ's reasons for

discounting Dr. Metcalf's opinion were specific and legitimate because she explained Dr. Metcalf's opinion took the form of a checklist unsupported by objective evidence or explanation, and it contradicted examination findings and was based on mere summaries of Plaintiff's subjective complaints. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194-95 (9th Cir. 2004); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ explained that Dr. Wood justified the limitations imposed on Plaintiff with MRI scans that revealed lumbar degenerative disc disease, impingement syndrome, degeneration of the right shoulder, and other exam findings that returned minimal and benign results. The ALJ further noted that although Dr. Wood found cervical and lumbar tenderness and a trace of positive impingement on the right, other findings were otherwise unremarkable: normal ranges of motion in the neck, back, and upper extremities; no spasms; negative straight-leg raising test; no allodynia; negative axial compression test; normal sensory and motor examinations; grip strength of 90/80/85 on the right and 100/100/87 on the left; ability to heel-and-toe walk; ability to perform a full squat; and a negative examination of the knees. *Cf. Petite*, 2010 WL 2232116, at *5 (reversing and remanding where the ALJ failed to specify which conclusions and findings were inconsistent). Overall, the ALJ opined Dr. Wood's opinion was consistent with the record as a whole, including evidence of a lack of atrophy, benign objective findings made by Dr. Metcalf, and admissions made to a third-party emergency room physician. (AR 1364.)

Plaintiff's argument that Dr. Metcalf's status as a treating physician entitles his opinion to more weight than Dr. Wood's status as an examining physician is unpersuasive because status as a treating physician does not render an opinion more credible where, as here and as detailed above, the ALJ provides specific and legitimate reasons for giving an examining physician's opinion more weight than a treating physician's. *Petite*, 2010 WL 2232116, at *3; (*see* Comm'r Brief at 5-6). That Dr. Metcalf has treated Plaintiff for about nine years is not dispositive as long

as other factors, such as the adequacy of the opinion's supporting explanation, weigh towards giving Dr. Wood's opinion more weight. (*See* Pl. Brief at 16-17.) Plaintiff's arguments that Dr. Metcalf's opinion was supported with medical evidence and corroborating findings and that Dr. Metcalf's opinions were improperly classified as benign, also do not warrant reversal, never mind a remand for award of benefits (Pl. Reply at 6-7). (*See* Pl. Reply at 2. *But see* Comm'r Brief at 3 (citing *Burch*, 400 F.3d at 679 (upholding the ALJ's decision as long as it is a reasonable one)).) The Court also does not read the ALJ's decision as an interpretation of raw medical data because the ALJ did not merely review raw medical data; rather, she drew comparisons between assessments performed by Drs. Metcalf and Wood and their respective findings, and the record as a whole. (*See* AR 1362-63.)

The Court further finds that the ALJ's characterization of Plaintiff's treatment regimen as "generally routine and conservative" is proper. Where medical evidence could reasonably lead to two different conclusions, as is the case here, the Court must defer to the conclusion reached by the ALJ. *Ryan*, 528 F.3d at 1198. Here, the ALJ's conclusion that Plaintiff's two injections (AR 244), use of prescribed narcotics (AR 697), knee surgery (AR 303), and additional surgery recommendation (AR 420), are conservative, is reasonable when considered against the entire medical record. (*See e.g.*, AR 251 ("He is better now than he has been in the past."), 259 (realizing benefit from physical therapy and a home exercise program), 1331 (noting benefit from pool and weight room therapy)); *see also Brown v. Berryhill*, No. 16-00776, 2018 WL 573371, at *10 (E.D. Cal. Jan. 26, 2018) ("[T]he fact that Plaintiff has been prescribed narcotic treatment or received injections does not negate the reasonableness of the ALJ's finding that Plaintiff's treatment *as a whole* was conservative . . . ." (internal quotation marks omitted)); *Higinio v. Colvin*, No. 12-1820, 2014 WL 47935, at *5 (C.D. Cal. Jan. 7, 2014). That Plaintiff might reasonably conclude the opposite, (Pl. Reply at 5), does not make the ALJ's conclusion any less reasonable. *Burch*, 400 F.3d at 679.

Plaintiff correctly posits that an ALJ cannot reject a medical report solely because it was obtained for workers' compensation purposes. (*See* Pl. Brief at 16.) However, and as the Commissioner points out, an ALJ may consider any bias she perceives when the medical provider appears to be more of an advocate, and the medical record lacks objective evidence supporting the provider's opinion. *See Nguyen v. Chater*, No. 95-55346, 100 F.3d 1462, 1464 (9th Cir. 1996); *Flores v. Colvin*, No. 12-01424, 2013 WL 3336995, at *4 (C.D. Cal. July 1, 2013); (Comm'r Brief at 8.) Here, even if the ALJ had erred in discounting Dr. Metcalf's opinion on the belief he was biased, the ALJ provided other germane reasons, as discussed above, to discount his opinion. *See Burch*, 400 F.3d at 679.

## V. CONCLUSION

IT IS ORDERED that Judgment shall be entered **AFFIRMING** the decision of the Commissioner denying his period of disability and DIB.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: May 31, 2024

/s/
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**